UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CARY VALLIER, JR.                          CIVIL ACTION NO. 11-cv-0933

VERSUS                                     JUDGE STAGG

BOSSIER MEDIUM SECURITY                    MAGISTRATE JUDGE HORNSBY
FACILITY, ET AL

**REPORT AND RECOMMENDATION**

**Introduction**

Carey Vallier, Jr. ("Plaintiff") was a DOC prisoner who was transferred to the Bossier Parish Medium Security Facility, where he was housed from December 6, 2010 until April 28, 2011.  He alleges in this action that Bossier officials (1) denied him a medicinal cream prescribed at another facility, (2) confiscated and destroyed his Qu'ran, and (3) interfered with his efforts to send legal mail to the Bossier Parish Courthouse.

Before the court are two motions.  The first is a Motion to Dismiss (Doc. 30) by the Bossier Parish Medium Security Facility and the Bossier Parish Sheriff's Department for reasons including that neither is a legal entity capable of being sued.  The remaining five defendants, all individuals, have joined in a Motion for Summary Judgment (Doc. 32) that attacks the claims on the merits.  For the reasons that follow, both motions should be granted.

**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Denial of Medicine**

Plaintiff alleged in his complaint that, while housed at the Hunt Correctional Center, he was prescribed medicinal cream to treat sores on his head, and he paid $2.00 to fill the prescription. He alleged that Deputy Bowles confiscated the medicine when Plaintiff arrived at the Bossier facility. To prevail on a claim that the confiscation of the cream violated the Constitution, Plaintiff must prove that Bowe was "deliberately indifferent" to Plaintiff's "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses

only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92.

Defendants submit a medical screening form that Plaintiff signed on his admission to the Bossier facility. He answered "no" when asked if he was currently taking any medication. When asked if there were any medical problems officials should know about, he answered only, "heart hurts." No skin conditions were noted.

There does not appear to be any record of medication being confiscated upon admission, but Warden Rodney Boyer testifies in an affidavit that prescription medication that is not adequately identified with the name of the medicine and the inmate's name is not permitted in the facility. Any non-permitted medication in an inmate's possession will be confiscated and destroyed. Perhaps that is what happened to Plaintiff's cream.

Plaintiff filed a grievance dated December 14, 2010 in which he complained that his prescribed medication had been taken and not replaced. Dr. Russell Roberts testifies in an affidavit that he examined Plaintiff two days later, on December 16, and saw well-healed small keloids in Plaintiff's occipital (back of head) region. There was no appearance of inflammation, so Dr. Roberts did not prescribe steroid cream. About a month later, in January 2010, Plaintiff filed a kite and complained that the sores on his head had increased and were bleeding at night. Dr. Russell examined him two days later and testifies that he saw the presence of small keloids on the back of Plaintiff's scalp, none of which were inflamed

or infected or appeared to be fresh. Dr. Russell told Plaintiff of methods to prevent the reoccurrence of the condition, but he chose not to prescribe steroid cream.

There are no other medical records to indicate this problem continued. Plaintiff was transferred to another prison a few months later, and he has since notified the court of a change of address to what appears to be a private residence. The motions were noticed for briefing, but Plaintiff did not file any opposition.

The moving defendants have satisfied their initial responsibility of identifying materials in the record that they believe demonstrate the absence of a genuine dispute of material fact. The burden then shifted to Plaintiff, but he has done nothing to satisfy it. The uncontested summary judgment evidence shows that Plaintiff suffered from a minor skin irritation. When he complained about it on two occasions, he was promptly examined by a physician who found that medication was not required. That evidence would not permit a reasonable jury to return a verdict finding that any prison official responded to Plaintiff's medical needs by engaging in the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Summary judgment is warranted with respect to this claim.

**Confiscation of Qu'ran**

Plaintiff alleged that, when he arrived at the Bossier facility, Deputy Bowles confiscated his Qu'ran without reason. He also alleges that prison officials destroyed the book and forbid him from ever retrieving it. Defendants challenge those allegations.

A property confiscation form in Plaintiff's file shows that, on arrival, certain items of clothing, a CD player, and "(1) hard book" were confiscated. Warden Boyer testifies that hardcover books are not permitted in the facility because they can be used to fashion a weapon. If an inmate arrives in possession of a hardcover book, it is confiscated, cataloged on the confiscation form, and returned to the inmate upon his release or transfer from the facility. Plaintiff signed the confiscation form on April 28, 2011 to indicate he had received the return of his items, including the hard book.

There is no specific evidence that the confiscated hardcover book was the Qu'ran at issue, but prison officials suggest that is likely the case. They also note that Plaintiff was advised, in response to a grievance, that he could have a paperback Qu'ran sent to him from a bookstore or other authorized source, and officials "will more than happily give it to you."

Inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. But incarceration brings about necessary limitations of many rights, so prison officials may enforce rules that affect the exercise of religion if they do so for valid penological reasons including institutional security. O'Lone v. Estate of Shabazz, 107 S.Ct. 2400, 2404 (1987). For example, the Supreme Court has upheld a ban on receipt of hardback books unless mailed directly from a publisher or bookstore. Bell v. Wolfish, 99 S.Ct. 1861, 1880 (1979). And when a prisoner complained to the Fifth Circuit that he was denied a copy of the Qu'ran, the Court noted that any religious literature refused him was barred by a "legitimately security-related and content-

neutral prison regulation against hardcover books." Evans v. Tarrant County, 36 F.3d 90 (5th Cir. 1994) (unpublished).

Defendants have again pointed to evidence that undermines the key allegation of this claim—that a Qu'ran was destroyed and a replacement denied—and they have squarely challenged Plaintiff's ability to prove the claim. That shifted the burden to Plaintiff to present summary judgment evidence that would demonstrate a genuine dispute of material fact. Plaintiff has done nothing to satisfy his burden, so summary judgment is appropriate on this claim.

**Mail Procedure**

Plaintiff alleged in his complaint that he mailed a request for judicial review to the state courthouse in Bossier Parish but learned his mail was being withheld by Major Gray and (then) Lieutenant Boyer. Plaintiff alleged that Gray told him the court returned the mail because Plaintiff needed to file a motion to proceed in forma pauperis. Plaintiff nonetheless alleges that the mail was opened, read, and withheld from the state court.

Warden Boyer testifies that outgoing mail sent by inmates is not opened for inspection if the envelope contains only paper. Only envelopes that contain items other than paper are inspected for contraband, but it is not facility policy to read the outgoing mail. He also notes that mail sent by inmates to the Bossier Parish Clerk of Court is commonly returned for failure to comply with proper procedure for proceeding in forma pauperis.

Plaintiff attached to his complaint two envelopes addressed to the Bossier Parish Clerk of Court that he complains were not delivered. Defendants point out that the envelopes bear postmarks that indicate the items were handled by the postal service, and they squarely challenge Plaintiff's lack of evidence to support his claim that jail officials withheld his legal mail. Once again, Plaintiff has not presented any competent evidence that would give rise to a genuine dispute on this issue. The absence of supporting evidence requires that summary judgment be granted on this final claim.

**Facility and Department**

The recommended dismissal of all underlying claims makes it unnecessary to address the motion to dismiss filed by the Bossier Parish Sheriff's Department and Bossier Parish Medium Security Facility. Briefly, however, each would be entitled to dismissal even if the claims had merit.

The sheriff's office or department is not a legal entity capable of being sued. Cozzo v. Tangipahoa Parish Council- President Government, 279 F.3d 273, 283 (5th Cir. 2002). The same is true with respect to the Bossier Parish Medium Security Facility. Terry v. Bossier Medium Security Facility, 2010 WL 4875679, *7 (W.D. La. 2010).

Accordingly,

**IT IS RECOMMENDED** that the **Motion to Dismiss (Doc. 30)** and **Motion for Summary Judgment (Doc. 32)** be **granted** and that all claims against all Defendants be **dismissed with prejudice**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of August,

_____
Mark L. Hornsby
U.S. Magistrate Judge